**HOWARD UNIVERSITY HOSPITAL, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Jacqueline Binns, Intervenor.**

**No. 03–AA–740.**

District of Columbia Court of Appeals.

Argued April 13, 2004.

Decided Aug. 18, 2005.

William H. Schladt, Gaithersburg, MD, for petitioner.

Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward E. Schwab, Deputy Attorney General, and William J. Earl, Assistant Attorney General, were on the statement in lieu of brief and the response to this court's order to show cause, for respondent.

Eric M. May, Washington, DC, for intervenor.

Before SCHWELB, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Petitioner Howard University Hospital (the "Hospital") asks us to review and reverse a workers' compensation decision by the Director of the Department of Employment Services ("DOES") in favor of intervenor and Hospital employee Jacqueline Binns. Overruling an administrative law judge, the Director found that Binns remained disabled by the indirect sequelae of a severe work-related allergic reaction even after her acute allergic symptoms had subsided. The Hospital contends that the Director exceeded his authority by engaging in a *de novo* review of the evidence instead of deferring to the contrary findings of the administrative law judge. After determining that we have jurisdiction to consider the Hospital's petition despite initial indications otherwise, we remand for further proceedings in light of our recent and potentially dispositive opinion in *Washington Post v. District of Columbia Department of Employment Services,* 853 A.2d 704 (D.C.2004).

## I.

A threshold issue we must decide is whether we have jurisdiction to entertain the Hospital's petition for review. The issue is one of timeliness. The Workers' Compensation Act provides that an aggrieved party may petition this court to review the Director's final decision on a compensation order pursuant to the District of Columbia Administrative Procedure Act ("APA"). D.C.Code § 32–1522(b)(3) (2001). The APA in turn provides that a petition for review shall be filed within such time as this court may by rule prescribe. D.C.Code § 2–510(a) (2001). Implementing that provision, our rules state that "[u]nless an applicable statute provides a different time frame,"— which is not the case here—"the petition for review must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed." D.C.App. R. 15(a)(2). "If the order or decision is made out of the presence of the parties and notice thereof is by mail, the petitioner will have 5 additional days from the date of mailing." *Id.* The time limits of Rule 15(a)(2) are "mandatory and jurisdictional." *Flores v. District of Columbia Rental Hous. Comm'n,* 547 A.2d

1000, 1003 (D.C.1988). "Once the time prescribed by the rule has passed, we are without power to hear the case." *Totz v. District of Columbia Rental Hous. Comm'n,* 474 A.2d 827, 829 (D.C.1984).

The Director issued his final decision in this case on April 11, 2003. An appended certificate of service, signed by an "authorized clerk" in the Office of General Counsel, states that a copy of the decision was sent to the Hospital's counsel of record on that same day by certified mail. The Hospital did not petition for review of the decision until July 18, 2003—over three months after the decision was mailed, and thus seemingly beyond the deadline imposed by Rule 15(a)(2).

It is conceded, however, that, for unknown reasons, the April 11 certified mailing was never received by the Hospital or its counsel. They did not learn of the Director's decision until intervenor's counsel faxed it to the Hospital's counsel on June 17, 2003 (more than two months after the decision was issued). Upon prompt investigation, the parties determined that the DOES administrative file did not contain a return receipt evidencing that a certified mailing actually was sent to the Hospital's counsel on April 11. Counsel thereupon asked the Director to resend the decision to him by certified mail so that he could file a timely petition for review in this court. The Director complied with this request on June 30. The Hospital's counsel received the decision by certified mail the following day. He filed the instant petition for review seventeen days later, on July 18, 2003.

It is a general APA requirement that a copy of the agency decision in every contested case "shall be given by" the agency "to each party or to his attorney of record." D.C.Code § 2–509(e). "The time for filing a petition [for review] begins when the agency gives notice" of its decision, *Flores,* 547 A.2d at 1003, "in conformance with the rules or regulations of the agency." D.C.App. R. 15(a)(2). The DOES regulations regarding "service, filing and posting" state that notice of compensation orders "shall be accomplished" by hand delivery or by certified or registered mail. D.C. Mun. Regs. tit. 7, § 228.1 (2005). If the Hearings and Adjudication Section of DOES retains evidence of service, such as a return receipt for a certified mailing, "the receipt of the document shall be presumed; provided, that the presumption of receipt may be rebutted by evidence to the contrary." *Id.,* § 228.3. The regulations further state that "[w]henever the [Workers' Compensation] Act or this chapter provides a time period during which an action is to be taken, unless otherwise expressly provided, the time period shall run from the actual receipt of a document." *Id.,* § 228.4.

In their application to this case, these regulations are ambiguous in two respects. First, while § 228.1 expressly sets forth how the Hearings and Adjudication Section of DOES is to give notice of compensation orders, the regulations are silent as to how the Director is to give notice of his decisions on review of such orders. We note, however, that the Director purported to comply with § 228.1 in this case by giving notice of his decision via certified mailing, and we understand such compliance to be the Director's usual practice. Second, § 228.4 arguably does not make clear when the time period begins to run for filing a petition for review in this court, since that time period is prescribed not by the Workers' Compensation Act or the DOES regulations, but by a rule of this court. It is plausible to apply § 228.4 to petitions for review, however, since the Workers' Compensation Act incorporates the provisions of Rule 15(a)(2) by indirect reference, as explained above.

As a policy matter, we resolve these ambiguities in favor of the party seeking review and against the agency that drafted the language. *York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n,* 856 A.2d 1079, 1082–83 (D.C. 2004). Accordingly, construing §§ 228.1 through 228.4 to govern petitions for review of final decisions by the Director of DOES in workers' compensation cases, the Hospital's time to file its petition for review in this case began to run on July 1, 2003, the date its counsel first received a copy of the Director's decision from the DOES by certified mail and thereby was given notice of the decision "in conformance with" DOES regulations. D.C.App. R. 15(a)(2). The Hospital's petition for review, filed on July 18, 2003, only seventeen days later, was therefore timely.

Notwithstanding its regulations, however, the DOES argues that the Hospital's petition for review was untimely because the Hospital's counsel had received actual, if informal, notice of the Director's decision from intervenor's counsel on June 17, 2003, which was more than thirty days before the Hospital filed its petition. We do not agree that such informal notification satisfies the requirement of Rule 15(a)(2) of notice "in conformance with" the agency's regulations. *Cf. York Apartments Tenants Ass'n,* 856 A.2d at 1083 (rejecting argument that time for filing review petition may run from date decision is published in D.C. Register rather than subsequent date of service; "having a uniform filing deadline for all petitioners ... is preferable"). We decline to adopt an "actual, even if informal" notice rule that would create unnecessary ambiguity in an area where "we have emphasized the importance of eliminating ambiguity." *Id.* at 1082 (quoting *In re D.R.,* 541 A.2d 1260, 1264 (D.C.1988)). The case on which DOES relies, *Stone v. District of Columbia Department of Employment Services,*

707 A.2d 789, 790–91 (D.C.1998), is distinguishable. In *Stone,* we merely held that a petitioner was on constructive notice that a compensation order automatically became "a final decision for purposes of appeal" by operation of law after forty-five days under former District of Columbia Code § 36–322(b)(2) (1997), so that her petition for review had to be filed within thirty days following the expiration of the forty-five day period. Unlike the petitioner in the case now before us, the petitioner in *Stone* had received proper notice of the order in conformance with DOES regulatory requirements. *See also Flores,* 547 A.2d at 1004–05.

As we hold that the Hospital's petition for review was timely, we have jurisdiction to proceed to the merits.

## II.

Intervenor Jacqueline Binns worked for Howard University Hospital as an emergency room nurse. She stopped working there on August 28, 1999, after suffering an acute allergic reaction from exposure to latex, which is used in protective gloves and other items commonly found in clinical settings. Binns's debilitating symptoms included breathing difficulties and nausea. Following an evidentiary hearing on her application for workers' compensation benefits, the administrative law judge ("ALJ") found that Binns began manifesting allergic reactions to latex while working as a nurse at the Hospital in approximately 1990, and that her most recent disabling reaction was causally related to her employment there. The ALJ also found that Binns's symptoms subsided when she was away from work and that she had "stabilized and returned to her normal, preacute condition" by October 8, 1999. *Binns v. Howard Univ. Hosp.,* H & AS No. 00–389, OWC No. 546606 (Sept. 27,

2000). Binns continued to have some breathing problems, the ALJ acknowledged, but those problems were attributable to her pre-existing allergies to substances other than latex and represented her "baseline condition." *Id.* The ALJ accordingly concluded that Binns had a compensable injury and was temporarily totally disabled only from August 28, 1999, through October 8, 1999. The mere fact that Binns's allergy to latex precluded her from returning to her job at the Hospital even after her latex-triggered symptoms had subsided did not mean, the ALJ ruled, that she had a continuing compensable disability after October 8.

Seeking a continuation of her temporary total disability benefits beyond October 8, 1999, Binns appealed the ALJ's compensation order to the Director of the DOES. In a brief decision dated February 14, 2002, the Director determined that the ALJ had overlooked, or at least had failed to address, the opinion of Binns's treating physician, Dr. Elena R. Reece, that Binns continued to be disabled as a result of her allergic reaction to latex after October 8, 1999. The Director therefore set aside the ALJ's initial decision and remanded the case "for a decision that considers the record as a whole." *Binns v. Howard Univ. Hosp.*, H & AS No. 00–389, OWC No. 546606, Dir. Dkt. No. 00–68 (Feb. 14, 2002).

On remand, the ALJ addressed Dr. Reece's testimony anew but adhered to his original decision. The ALJ noted that Dr. Reece had agreed with the Hospital's counsel that the reason it continued to be "very difficult for [Binns] to leave home [was] because she has a lot of allergies that she has had all her life." *Binns v. Howard Univ. Hosp.*, H & AS No. 00–389, OWC No. 546606 (Mar. 18, 2002). Thus, the ALJ concluded, according to Dr. Reece, Binns's

present inability to work is not causally related to the allergic reaction to latex that [she] experienced in August of 1999. Rather, [Binns's] difficulties stem from an idiopathic, pre-existing condition, in the nature of an "atopic" disorder, which is a condition in which the afflicted individual is highly allergic to a wide array of substances.

*Id.* Additionally, the ALJ observed, Dr. Reece found that Binns had "stabilized by October 8, 1999, having recovered from the acute allergic reaction that was brought on by [her] August 28, 1999 exposure to latex at employer's hospital." *Id.* While "[i]t is not surprising that Dr. Reece is of the opinion that [Binns] ought not return to work as an emergency room nurse, because [Binns] is now, and has been since at least 1990, seriously allergic to a substance that is inescapable in a hospital setting, ... [her] inability to return to work following the resolution of an acute allergic episode, due to the threat of additional allergic reactions upon such a return to work, is not sufficient to support a claim for ongoing disability." *Id.*

Binns again appealed the ALJ's compensation order to the Director. On this second occasion, in his final decision of April 11, 2003, the Director upheld the award of temporary total disability benefits from August 28, 1999, through October 8, 1999, but reversed the ALJ's denial of Binns's claim for such benefits from October 9, 1999, "to the present and continuing." *Binns v. Howard Univ. Hosp.*, H & AS No. 00–389, OWC No. 546606, Dir. Dkt. No. 02–110 (Apr. 11, 2003). The Director determined that on remand the ALJ still had failed to consider the entirety of Dr. Reece's testimony, in light of which the ALJ's key finding, that Binns was not disabled after October 8 by reason of her allergic reaction to latex on August 28, was not supported by substantial evidence in

the record. In reaching that conclusion, the Director relied principally on Dr. Reece's uncontradicted testimony (which the ALJ had not discussed in either of his orders) indicating that Binns's allergic reaction to latex had exacerbated her other, non-work-related allergies:

> Dr. Reece testified that [Binns] is unable to leave her home to work because her latex allergy causes her pre-existing allergies to worsen. In this regard, Dr. Reece testified to the effect that [Binns's] work-related exposure to latex has resulted in the aggravation of her pre-existing allergies.[1] There was no testimony from Dr. Reece reflecting that [Binns's] aggravation has resolved.... The fact that [Binns] had pre-existing allergies which also contribute to her symptoms does not negate the work-related aggravation of her pre-existing condition.

*Id.* The Director also cited Dr. Reece's testimony (which the ALJ had discussed) that Binns should not return to the hospital environment because of her sensitivity to latex. The Director did not, however, elaborate on the significance of this particular restriction on Binns's activity.

In asking this court to review the Director's decision, the Hospital does not dispute that Binns suffered a work-related injury from her August 28 exposure to latex that entitled her to disability benefits through October 8, 1999. The Hospital argues, however, that the Director exceeded his authority by engaging in a *de novo* review of the evidence and rejecting the ALJ's factual determinations that Binns had returned to her pre-injury condition and was no longer disabled by latex-induced symptoms after October 8. *See, e.g., Pickrel v. District of Columbia Dep't of Employment Servs.*, 760 A.2d 199, 203 (D.C.2000) ("The Director must accept those findings of fact [by the ALJ] which are supported by substantial evidence even if he might have reached a different result based on an independent review of the record."). Whether or not Binns's allergic reaction to latex aggravated her other allergies, the Hospital adds, "there was no testimony from Dr. Reece or any other physician that [Binns] is currently unable to work because of her other allergies." Rather, the Hospital asserts, the "only thing" preventing Binns from returning to her job is the danger that re-exposure to latex would cause her to become disabled again.

Binns urges us to uphold the Director's ruling. She primarily argues that the ALJ found her not to be disabled after October 8, 1999, only by improperly ignoring the uncontradicted medical testimony that her August 28 exposure to latex aggravated her other allergies, as the Director concluded. *See, e.g., Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 997 (D.C.2000) ("It is well established in this jurisdiction that a disability resulting from the aggravation of a pre-existing condition

---

1. Specifically, the Director noted, Dr. Reece testified that "[i]n allergies, things are additive in a geometric sense," in that

> if you add one ... allergic reactivity to another allergic reactivity, you quadruple the allergic response as opposed to just doubling it. So that once one has one allergic response and that worsens, everything worsens.

*Id.* In line with that general testimony, Dr. Reece expressed the opinion that Binns's la-

tex allergy had "affected her medical condition" since August 1999 in that

> with allergies, things become modified by having a new allergic exposure, all of your other allergy responses really are heightened. So that if she had dust allergies, then this would be worsened by having a new allergy to latex.

*Id.*

is compensable under the WCA [Workers' Compensation Act]."); *see also Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 572 (D.C.1990) (noting duty to make findings on each material contested factual issue).

■ The parties thus have focused their arguments on whether it was proper for the Director to reject the ALJ's finding and make an independent determination that Binns's August 28 exposure to latex indirectly caused her to be disabled after October 8, 1999, by aggravating her other, non-work-related allergies. This is, we think, a close question, but one which we may not need to resolve in view of a recent decision of this court that contradicts a fundamental premise of both the ALJ's decision and the Hospital's petition for review. Both the ALJ and the Hospital have assumed that Binns was not disabled within the meaning of the Workers' Compensation Act if all her latex-related symptoms truly have abated and she cannot return to her job at the Hospital only because she should not risk being re-exposed to latex. That assumption is contrary to our recent holding in *Washington Post*, 853 A.2d at 706–07.[2]

Like Binns, the claimant in *Washington Post*, Monique Berthault, developed a debilitating allergic condition from exposure to a chemical in use at her workplace. Although Berthault's allergic symptoms also abated after she stopped working, she too could not return to her job lest she have further contact there with the chemical to which she was sensitive. We upheld the Director's decision that Berthault was entitled to continue receiving disability benefits. Distinguishing cases in which the claimants either had manifested their allergic conditions before they became em-

ployed or were unable to establish a causal relation between their conditions and the workplace—the same cases on which the ALJ and the Hospital have relied in the present case—we held in *Washington Post* that where a claimant's allergic condition arises out of and is causally related to her employment, she continues to suffer from a compensable disability so long as she cannot return to her job (or obtain a monetarily equivalent job), even if her allergic symptoms have subsided and the only thing that prevents her from going back to work is the danger that her symptoms will recur if she does. *Id.* at 707–08.

■ The ALJ in the present case specifically found that Binns developed her allergy to latex in her Hospital employment (as early as 1990). "When an allergy develops for the first time at the workplace, it is identical to any other work-related injury." *Washington Post*, 853 A.2d at 707. It is conceded that Binns's allergy precluded her from returning to her nursing job at the Hospital even after October 8, 1999, if only because she had to avoid the risk of re-exposure to latex. Even if Binns was completely asymptomatic after October 8, 1999, our holding in *Washington Post* therefore would appear to require affirmance of the Director's decision, whether or not the Director exceeded his authority in rejecting the ALJ's factual findings in other respects. There evidently exists, in other words, an independent, alternative ground on which to affirm the determination that Binns continued to be temporarily totally disabled beyond October 8, 1999.

Nonetheless, out of an abundance of caution, we think the better course is to remand this case for further proceedings in light of *Washington Post*. The general

---

**2.** We issued our decision in *Washington Post* in July 2004, approximately three months af-

ter oral argument in the present case.

rule, derived from the Supreme Court's decision in *Securities Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943), is that an administrative order can be sustained only on the grounds relied upon by the agency. *Clark v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 722, 730 (D.C.2000). While this rule does not prevent us from upholding the agency on a different ground where the result is clearly ordained by law, *see Bio–Med. Applications v. District of Columbia Bd. of Appeals & Review*, 829 A.2d 208, 217 (D.C. 2003) ("As the Supreme Court has clarified, 'the ruling in *Chenery* has not required courts to remand in futility.'") (citation omitted), we must exercise caution before doing so. Caution is in order here, we think, if only because the question of Binns's post-October 8 disability is highly fact-dependent. On remand, the Director is in the best position to determine if our holding in *Washington Post* truly disposes of this case without regard to whether Binns suffered a disabling aggravation of her non-work-related allergies as a result of her August 28, 1999, exposure to latex.[3]

Accordingly, without deciding whether the Director exceeded his authority by rejecting the ALJ's findings and evaluating the evidence *de novo*, we vacate the Director's decision and remand the case for further proceedings not inconsistent with our opinion.

---

**3.** It may be, for example, that the Hospital can establish that Binns's pre-existing allergies independently prevented her from resuming work at the Hospital. If that is shown, we express no opinion as to whether Binns still would be entitled under *Washington Post* to workers' compensation benefits on account of her latex allergy. *Cf. Washington Hosp. Ctr.*, 744 A.2d at 997 (noting that compensation may be warranted "so long as [the employee's] disability arose, at least in part, from her work-related activities"). We think such issues are best addressed by the Director.